IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 13, 2015 Session

# IN RE ADISON P.

### Appeal from the Circuit Court for Henderson County
### No. 140881        Roy B. Morgan, Jr., Judge

---

### No. W2014-01901-COA-R3-CV – Filed May 29, 2015

---

This case arises from a writ of mandamus issued by the Circuit Court for Henderson County. The writ of mandamus directed Appellant/Judge Robert Stevie Beal, of the Juvenile Court for Henderson County, to hold a hearing on Appellee's motion for a show cause order in the underlying child custody case. Appellant appeals, arguing that the Circuit Court did not have authority to issue a writ of mandamus to the Juvenile Court because the Circuit Court and Juvenile Court have concurrent jurisdiction over custody matters. Before oral argument in the instant appeal, this Court entered judgment in Appellee's separate, accelerated, interlocutory appeal under Tennessee Supreme Court Rule 10B. *In re Adison P.*, No. W2015-00393-COA-T10B-CV, 2015 WL 1869456 (Tenn. Ct. App. April 21, 2015) ("*Adison I*"). In *Adison I*, this Court reversed Judge Beal's order denying Appellee's motion for recusal. Although not part of our appellate record in this appeal, we take judicial notice of our judgment in *Adison I*. Having removed Judge Beal from the underlying case, we conclude that the writ of mandamus, which is issued directly to "Judge Beal," is rendered null by his removal from the case. Because no present ongoing controversy remains in this case, this appeal is dismissed as moot.

### Tenn. R. App. P. 3 Appeal as of Right; The Appeal is Dismissed

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Chadwick R. Wood, Lexington, Tennessee, for the appellant, The Honorable Robert Stevie Beal.

Brian Schuette, Bowling Green, Kentucky, pro hac vice, for the appellee, William R.F.

**OPINION**
**I. Background**

In the interests of consistency and judicial economy, we recite the relevant factual and procedural history as set out in ***Adison I***:

> [Appellant] Father and the minor child's mother . . . Joey M.P. ("Mother"), were not married when the minor child was born. Approximately a year after the minor child's birth, the trial court held a hearing with regard to custody and paternity. An order on the hearing was subsequently entered on December 8, 2003. In addition to declaring Father as the minor child's natural father, the trial court's December 8, 2003, order provided Father with specified visitation rights.

> According to Father, Mother, over time, consistently failed to follow the trial court's order with respect to visitation. As a result, on July 11, 2011, Father filed a petition for contempt and asked that the trial court enter an order granting him temporary exclusive custody of the minor child. In addition to alleging that Mother had refused to allow Father to exercise certain visitation rights, Father alleged that Mother had removed the minor child to Texas. The parties later reached an agreement concerning the parenting issues, and on August 25, 2011, an agreed order was entered prohibiting Mother from removing the minor child [from] Tennessee absent court approval.

> Despite the agreed order entered in August of 2011, the friction between the parties continued. Visitation disputes remained a problem and led to further litigation. Once again, however, the parties were able to reach some resolution. Following a successful mediation, the trial court entered an agreed order on June 4, 2013. This agreed order permitted Mother to relocate to Texas with the minor child and outlined certain dates on which Father would have visitation. In relevant part, the June 4, 2013, order provided that Father was entitled to visitation with the minor child "during the summer months with the exception of one week."

> According to Father, although his summer visitation with the minor child was scheduled to begin on June 5, 2013, he claims he was unable to

2

exercise that visitation as a result of his inability to locate or communicate with Mother. He further claims that although the trial court held a telephonic conference with the parties' counsel on June 26, 2013, the trial court did not enter an order following the conference and refused to order Mother to comply with the parties' agreed visitation order. Eventually, on July 26, 2013, Father, acting pro se, filed a "Petition for Contempt and Emergency Change of Custody." Despite his efforts to schedule this petition for a hearing before Judge Steve Beal, Father alleges that the trial court refused to hear his petition. Father later retained the assistance of counsel and filed a motion for the entry of a show cause order. Therein, Father requested that Mother appear and show cause why she should not be held in contempt for failing to abide by the agreed order entered on June 4, 2013. Father also gave notice to Mother's counsel that the matter was set for hearing on April 23, 2014.

Father alleges that when his counsel appeared before the trial court to present his motion, Judge Beal refused to hear it. Apparently, Judge Beal indicated he would not hear the motion unless Mother's counsel consented to the hearing or Mother was personally served with process. Father believed that such a requirement was unnecessary in light of the fact that he had properly noticed the motion and served it on Mother's counsel of record. Accordingly, on June 9, 2014, Father filed a complaint for mandamus relief in the Circuit Court of Henderson County. Father also filed a complaint against Judge Beal with the Tennessee Board of Judicial Conduct on June 13, 2014. Therein, Father alleged that Judge Beal's failure to hear his motion constituted judicial misconduct.

On July 28, 2014, the Circuit Court conducted a hearing on Father's complaint for mandamus relief. Approximately a month later, on August 27, 2014, the Circuit Court entered a writ of mandamus granting Father relief in relation to his motion for the entry of a show cause order. Specifically, the Circuit Court directed Judge Beal to set Father's motion for the entry of a show cause order for hearing.[Footnote 3 states: "As noted by Father, Judge Beal has appealed the order of the Circuit Court that granted mandamus relief. That appeal, *In re Adison P*., No. W2014–01901–COA–R3–CV, is still pending in this Court." The appeal referenced in *Adison I* is the instant appeal]. Following the Circuit Court's grant of mandamus relief, Father filed a petition in the trial court requesting that Judge Beal recuse himself from overseeing the visitation dispute between the parties. Judge Beal denied the motion, and although Father subsequently filed a petition

for recusal appeal under Tennessee Supreme Court Rule 10B, we dismissed the appeal as untimely.

On December 4, 2014, Father filed a second motion for recusal. This motion was predicated on grounds different from those that had been specifically raised in the first motion for recusal. Namely, the second motion alleged that there was a reasonable question regarding Judge Beal's objectivity in Father's case due to the fact that Judge Beal directed Father's counsel to draft an order that partially enforced Father's visitation rights, only to redraft the order to exclude those provisions. As Father recited in the motion:

\* \* \*

On January 7, 2015, the trial court held a hearing on Father's second motion for recusal, and on February 17, 2015, Judge Beal entered an order denying the motion. Judge Beal dismissed Father's second motion for recusal by reasoning that the matters complained of had been disposed of in the order denying Father's first motion for recusal. As such, Judge Beal considered the matters to be res judicata. Following Judge Beal's denial of the second motion for recusal, Father timely pursued this accelerated appeal pursuant to Tennessee Supreme Court Rule 10B [in *Adison I*].

*Adison I*, 2015 WL 1869456, at \*1-\*3 (footnotes omitted).  In *Adison I*, this Court reversed Judge Beal's order denying Father's second motion for recusal.  *Id*. at \*6.  On April 21, 2015, this Court entered its Judgment in *Adison I*.  The Judgment states that "[t]he decision of the trial court is reversed and this case is remanded to the trial court for transfer to a different Judge."

The instant appeal concerns the authority of the Circuit Court of Henderson County to issue a writ of mandamus to Judge Beal, on a case in which the Juvenile Court has concurrent jurisdiction with the Circuit Court, requiring Judge Beal to hold a hearing on Father's petition in the underlying child custody case. In his complaint for mandamus relief, filed on June 9, 2014, Father makes several claims for relief, including, *inter alia*, "entry of an order directing an appropriate judicial official to conduct a hearing on all pending motions . . . ."  After conducting a hearing on July 28, 2014, the Circuit Court issued a writ of mandamus, stating, in pertinent part that "Judge Beal is hereby ORDERED to take appropriate action on [Father's] motion for entry of show cause order by setting the matter for a hearing."  The writ specifically indicates that the Circuit Court "is not directing Judge Beal to rule on the Motion in any particular manner, only that

4

Judge Beal must grant [Father] a hearing on his Motion."

## II. Issues

Judge Beal appeals. He raises three issues for review, which we restate as follows:

1. Whether the Circuit Court had authority to issue a writ of mandamus to Judge Beal when the Circuit Court and Juvenile Court had concurrent jurisdiction over the underlying case.

2. If the mandamus was properly issued by the Circuit Court, whether the Circuit Court erred in making legal findings that are not allowed in a mandamus action.

3. Whether the Circuit Court should have granted Judge Beal's motion to dismiss the complaint for writ of mandamus because there was no evidence presented in support of Father's complaint.

## III. Analysis

We note at the outset that this Court's April 21, 2015 judgment in *Adison I* is not part of the appellate record in the instant appeal. Nonetheless, Tennessee law indicates that a court may take judicial notice of its own records and orders. *See Harris v. State*, 301 S.W.3d 141, 147 n. 4 (Tenn. 2010) ("The Court may take judicial notice of its own records."); *Reid v. Morristown Power et al*., No. E2012–02480–COA–R3CV, 2013 WL 3282916 (Tenn. Ct. App. June 26, 2013); *State v. Lawson*, 291 S.W.3d 864, 870 (Tenn. 2009) (observing "the axiom that if the proceedings are of a particular court, that court may appropriately take judicial notice"); *Hughes v. State*, 451 S.W.2d 696, 697 (Tenn. Crim. App.1969) (a court "can take judicial notice of its own orders and judgments"). Accordingly, we take judicial notice of our April 21, 2015 order, requiring the case to be transferred from Judge Beal to another judge. Furthermore, Tennessee Supreme Court Rule 10B Section 2.07 states that: "In an accelerated interlocutory appeal decided by either the Court of Appeals . . . a party may seek the Supreme Court's review of the intermediate court's decision by filing an accelerated application for permission to appeal. The application shall be filed in the Supreme Court **within ten days of the filing date of the intermediate court's order** or opinion." Here, neither party sought review from the Tennessee Supreme Court of our judgment in *Adison I* within the ten day time limit. Accordingly, the mandate issued on May 13, 2015, and our judgment in *Adison I* is now final.

Turning to the writ of mandamus, importantly, the mandate is issued directly to "Judge Beal," as opposed to a more generalized mandate to the trial court or the trial judge. In light of our holding in *Adison I*, Judge Beal is no longer associated with this case. Because Judge Beal is recused from the case, a mandate directing him to take some action *vis-à-vis* the case is of no further effect, i.e., the writ of mandamus is moot.

The doctrine of justiciability prevents courts from adjudicating cases that do not involve a "genuine and existing controversy*." McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). "Our courts will not render advisory opinions or decide abstract legal questions." *Id*. (internal citations omitted). A case must be justiciable when it is filed and throughout the course of litigation, including during the appeal. *Id*. Our courts will decline to hear a case if it does not "involve a genuine, continuing controversy requiring the adjudication of presently existing rights." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn.Ct.App.2005).

A moot case is no longer justiciable because it "has lost its character as a present, live controversy." *McIntyre*, 884 S.W.2d at 137. Generally, a case is moot when it "no longer serves as a means to provide relief to the prevailing party." *Id*. There are only a few recognized exceptions to the mootness rule: (1) the issue is of great public importance or affects the administration of justice; (2) the challenged conduct is capable of repetition and will likely evade judicial review;[1] (3) the primary subject of the dispute has become moot, but collateral consequences to one of the parties remain; and (4) the defendant voluntarily stops engaging in the challenged conduct. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty*., 301 S.W.3d 196, 204 (Tenn. 2009). Only if the issue falls within a recognized exception do we have discretion to reach the merits of the appeal. *Alliance for Native Am. Indian Rights*, 182 S.W.3d at 339.

With Judge Beal's recusal, any live controversy concerning a writ of mandamus directed to Judge Beal in this case is extinguished. We further conclude that none of the foregoing exceptions to the mootness doctrine are triggered in this case. Therefore, we dismiss the appeal as moot, pretermitting the remaining issues.

---

[1] To qualify for this exception, a party must show: (1) a "reasonable expectation" or "demonstrated probability" that the acts that instigated litigation will reoccur; (2) "a risk that effective judicial remedies cannot be provided in the event [the acts] reoccur;" and (3) "that the same complaining party will be prejudiced by the [ ] act when it reoccurs." *Alliance for Native Am. Indian Rights*, 182 S.W.3d at 339-40. A "theoretical possibility that an act might reoccur" is not sufficient to invoke this exception. *Id.* at 340.

## IV. Conclusion

For the foregoing reasons, we dismiss the appeal as moot. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Robert Stevie Beal and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

7